UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION ANNUITY AND APPRENTICESHIP,     12-CV-0834 (CBA)(VMS)
SKILL IMPROVEMENT ANND SAFETY
FUNDS,

                                      Plaintiffs,

-against-

M.C. LANDSCAPE GROUP, INC.,

                                      Defendant.

**DEFENDANT'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION DATED OCTOBER 16, 2015**

                                                                                                    Brian Gardner
                                                                                                   COLE SCHOTZ P.C.
                                                                                                   *Attorneys for the Defendant,*
                                                                                                   *M.C. Landscape Group, Inc.*
                                                                                                   1325 Avenue of the Americas, 19th Floor
                                                                                                   New York, New York 10019

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 4
OBJECTIONS .............................................................................................................................. 6
    OBJECTION 1: IRCA PROHIBITS THE AWARD OF UNPAID CONTRIBUTIONS TO THE PLAINTIFFS .................................................................................................................. 6
        A.    The Contribution Payments Are Future Benefits, Not Past-Due Wages ........................ 8
        B.    The Contribution Payments Incentivize Future Violations of the IRCA ........................ 9
    OBJECTION 2: CAPPARELLI'S DECLARATION RAISED ISSUES OF FACT AS TO THE ACCURACY OF THE REMITTANCE REPORT ........................................................... 12
        A.    Mr. Capparelli's Deposition Testimony Did Not Contradict or Preclude the Declaration. ................................................................................................................... 13
        B.    Capparelli's Declaration Raised Issues of Fact Over the Accuracy of the Remittance Reports ........................................................................................................................... 14
    OBJECTION 3: SUMMARY JUDGMENT ON DAMAGES WAS IMPROPER .................. 16
CONCLUSION ............................................................................................................................ 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alcoser v. A Spice Route, Inc.*, 2013 U.S. Dist. LEXIS 135900 (S.D.N.Y. 2013) ..........................7

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988)............................................................15

*Central Pension Fund of the Internat'l Union of Operating Engineers and Participating Employer v. Murphy's Tire, Inc.*, 1998 WL 865594 (N.D.N.Y. 1998) .....................................................................................................................................13

*Garcia v. American United Life Ins. Co.*, 2009 WL 6327459 (E.D. Tex. 2009)........................7, 8

*Hoffman Plastic Compounds v. National Labor Relations Bd.*, 535 U.S. 137 (2002)................................................................................................................................6, 7, 11

*Marquez v. Erenler*, 2013 U.S. Dist. LEXIS 138630 (S.D.N.Y. 2013)...........................................7

*Palazzo v. Corio*, 232 F.3d 38 (2d Cir. 2000).................................................................13, 14, 16

*Palma v. National Labor Relations Board,* 723 F.3d 176 (2d Cir. 2013) ...........................7, 11, 12

*Quiles v. City of New York*, 978 F.Supp.2d 374 (S.D.N.Y. 2013)..................................................13

*Solis v. Cindy's Total Care, Inc.*, 2011 U.S. Dist. LEXIS 138556 (S.D.N.Y. 2011) ......................7

*Zeng Liu v. Donna Karan Int'l, Inc.* 2002 U.S. Dist. LEXIS 10542 (S.D.N.Y.2002) ................................................................................................................................7

**STATUTES**

8 U.S.C. § 1324a.........................................................................................................................4, 6

M.C. Landscape Group, Inc. ("MC") respectfully submits the following objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Vera M. Scanlon ("Magistrate Judge Scanlon" or "Judge Scanlon") entered on October 16, 2015.

## INTRODUCTION

Plaintiffs, the trustees of Local 1010 benefit funds (the "Funds"), seek alleged unpaid benefit contributions from MC under ERISA in the principal amount of 251,378.69, plus interest, liquidated damages and attorney's fees. On November 6, 2013, Plaintiff's fully-briefed motion for summary judgment, and Defendant's opposition, was filed with the Court. (Doc. Nos. 29-41). On numerous dates thereafter supplemental briefing directed by Magistrate Judge Scanlon was filed. (Doc. Nos. 45, 46, 49, 50, 57, 64, 66, and 67).

MC fully opposed the motion for summary judgment. A large portion of the contributions sought are barred by the Immigration Reform and Control Act ("IRCA") which provides that unauthorized aliens may not be hired and may not collect a wage. (*See* 8 U.S.C. § 1324a). Many of the workers provided by the union for which Plaintiffs seek contributions are unauthorized aliens, a fact not known by MC at the time they performed their work, but later discovered (the "Unauthorized Workers"). The contributions for the Unauthorized Workers constitute over one-third of the total contributions sought. IRCA precludes the payment of contributions on behalf of unauthorized workers, and therefore Plaintiffs' motion, to the extent seeking contributions on behalf of these unauthorized workers, must be denied.

Second, the remittance reports submitted by MC (the "Remittance Reports") contain numerous inaccuracies and there are issues of fact over what contributions, if any, are due. MC inadvertently included all work performed by union employees on the Remittance Reports, whether or not that work constitutes covered or non-covered work. At the time that MC

performed the work in issue, it also performed non-covered work on separate projects, including the Bushwick Project, and the Remittance Reports incorrectly contain this non-covered work. Issues of fact concerning the accuracy of the Remittance Reports, and what amounts if any are due, preclude summary judgment.

On October 16, 2015, Magistrate Judge Scanlon issued the R&R, recommending summary judgment in the Plaintiff's favor, and awarding damages in the amount of $408,027.97, representing alleged delinquent contributions, interest and liquidated damages. (Doc. No. 68).

MC objects to the R&R in its entirety. First, Magistrate Judge Scanlon found that summary judgment was warranted regardless of whether or not the workers were authorized to work. Judge Scanlon incorrectly reasoned that the contributions were permissible under IRCA as "wages actually earned" on past-performed work. However, the contributions are not "wages actually earned," but rather are payments to the benefit funds which may be claimed and/or vest some time in the future. The Unauthorized Workers were paid all wages due for the work performed, and there is no claim to the contrary. Critically, Plaintiffs acknowledged on the motion below that the contributions may well **not** pay out to the workers, and that in such event the contributions "can still be dispersed to the Funds for the benefit of other plan participants and to cover other shortfalls." Because the contributions do not constitute wages actually earned by the Unauthorized Workers for past-performed work, payment of the contributions violates IRCA.

Second, Judge Scanlon incorrectly found that the award of contributions to the union did not create an incentive to violate IRCA in the future. This finding is erroneous. Given their unauthorized status, the Unauthorized Workers' ability to collect on the funds when they vest – which requires continued employment and presence in the Country – is unlikely. And as explained by the Plaintiffs, in the likely event the Unauthorized Workers are unable to collect,

the contributions will nevertheless be retained by the Funds, resulting in a windfall. Payment of wages on behalf of unauthorized workers therefore clearly incentivizes the union and its Funds to either: 1) work with companies with known illegal workers; or 2) to recruit members of illegal status. The contributions payments in issue therefore incentivize future violations of IRCA, and may not be awarded.

Finally, Magistrate Judge Scanlon found that the declaration of MC's president, Mariano Capparelli, submitted in opposition to the summary judgment motion, failed to raise an issue of fact over the accuracy of the Remittance Reports. The court erroneously held that the declaration contradicted Capparelli's deposition testimony and was precluded. Further, the court held that the declaration did not raise an issue of fact because it failed to annex certain books and records supporting the claim that the Remittance Reports are inaccurate. In so holding, Judge Scanlon incorrectly weighed the evidence presented and resolved disputed issues of fact in Plaintiffs' favor. As the party opposing summary judgment, MC was only required to show that its defense that the Remittance Reports was not "implausible," a requirement which MC fully met through the declaration. Moreover, the declaration was not inconsistent with Capparelli's prior deposition testimony and was therefore proper for consideration on the motion.

Accordingly, and as explained herein, this Court should decline to adopt the R&R and deny Plaintiffs' motion for summary judgment.

**OBJECTIONS**

**OBJECTION 1.  IRCA PROHIBITS THE AWARD OF UNPAID CONTRIBUTIONS TO THE PLAINTIFFS**

The law is clear that unauthorized aliens may not be hired or collect wages. See, 8 U.S.C. § 1324a; *Hoffman Plastic Compounds v. National Labor Relations Bd.*, 535 U.S. 137 (2002), *Palma v. National Labor Relations Board,* 723 F.3d 176, 185 (2d Cir. 2013); *Garcia v.*

*American United Life Ins. Co.*, 2009 WL 6327459 (E.D. Tex. 2009). In *Hoffman* an unauthorized worker sought back-wages under the NLRA for wrongful termination. *Hoffman*, 535 U.S. at 140. The Supreme Court denied an award of backpay for work not actually performed, explaining that such an award "not only trivializes the immigration laws, it also condones and encourages future violations." *Id*. at 150. The Court explained: "allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." *Id*. at 151.

Courts analyzing *Hoffman Plastics* make clear the critical inquiry is whether the particular damages sought would have the "propensity" of "condoning prior violations of the immigration laws and encouraging future violations." *Palma*, 723 F.3d at 184. Using this analysis, a limited exception for wages and overtime due on work already performed has been carved out, particularly for past-due wages under the FLSA. The courts reason that there is minimal incentive to violate IRCA in this situation, as the employer is simply paying what was promised for past-performed work, and no continuing violation of IRCA is encouraged through such payments. *See e.g. Coque v. Wildflower estates Developers, Inc.*, 58 A.D.3d 44, 54 (2d Dept. 2008); *Marquez v. Erenler*, 2013 U.S. Dist. LEXIS 138630 *2 (S.D.N.Y. 2013); *Solis v. Cindy's Total Care, Inc.*, 2011 U.S. Dist. LEXIS 138556 *6 (S.D.N.Y. 2011); *Zeng Liu v. Donna Karan Int'l, Inc.* 2002 U.S. Dist. LEXIS 10542 *2 (S.D.N.Y.2002); *Alcoser v. A Spice Route, Inc.*, 2013 U.S. Dist. LEXIS 135900 (S.D.N.Y. 2013).

There is no case law authorizing payment of ERISA benefits to unauthorized workers. To the contrary, the only case either party could find, *Garcia*, 2009 WL 6327459, found in *dicta*

that the payment of ERISA benefits **violated** IRCA. In *Garcia*, the court found that payment of life insurance proceeds under an ERISA plan to the beneficiary was prohibited under IRCA because the insured worker was an unauthorized alien. *Id*. at *18. There, the wife of the decedent-employee sought life insurance benefits under an ERISA health insurance plan. *Id*. at *18. The insurer declined coverage on grounds that the employee, unbeknownst to the insurer, was an unauthorized worker. While the basis for the denial of coverage, and the court's holding, was a material breach of the policy by the employee on grounds that the employee, based on his illegal status, was not qualified under the policy, the court nevertheless analyzed whether payment of insurance benefits to the employee's family violated the policy considerations of IRCA.

After analyzing *Hoffman Plastics* and the policy considerations therein, the *Garcia* court determined that the payment of life insurance benefits would unduly trench on the policy considerations of IRCA: "to require it to pay benefits in this situation 'would unduly trench upon explicit statutory prohibitions' embodied in the IRCA that are critical to federal immigration policy, 'encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations.'"  *Garcia* at *18.

 Magistrate Judge Scanlon omitted any discussion of *Garcia*, and improperly found that the payment of contributions to the benefit funds did not violate IRCA. (R&R, p. 32).  These findings should not be adopted by this Court.

> **A.     The Contribution Payments Are Future Benefits, Not Past-Due Wages**

In determining that the contribution payments did not violate IRCA, Magistrate Judge Scanlon distinguished between "undocumented workers seeking backpay for wages actually earned" – which is permitted – and undocumented workers seeking backpay for "work not

performed" – which violates IRCA. (R&R, p. 35).  The court reasoned that since the "contested contributions are for hours of Covered Work actually and already performed by Defendant's employees" they do not constitute "future benefits" which would otherwise be prohibited under IRCA. (*Id*.).

The contributions sought, however, are not backwages "already earned." The contributions are paid to the union funds – not the workers – and are not payable to the workers now – a clear distinction. The union funds are **not** seeking backpay for the employees for wages actually earned. To the contrary, the workers were paid all wages for the work performed – that is not in dispute. Rather, the contributions sought here are for the "benefit" plans for payment in the future, thus contemplating continued illegal employment and presence within the United States. Indeed, the funds in issue, the Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety funds, largely provide benefits to workers in the future, after certain years of continued and (in this case illegal) employment. The Pension fund, for example, necessary contemplates future illegal employment after which time the pension may vest for the particular worker.

The payment of contributions on behalf of those workers – in contemplation of paying out benefits to those workers in the future, after continued illegal employment and violation of the IRCA – contravenes IRCA's policy considerations, and is therefore prohibited. At a minimum, questions of fact exist as to whether these unauthorized aliens would have to continue working to receive the benefits at issue, resulting in continued and future illegal employment.

      **B.**    **The Contribution Payments Incentivize Future Violations of the IRCA**

Unlike the payment of past-due wages for work already performed, the Plaintiffs seek contribution payments – not to the workers themselves – but to the union funds, including

payment to the "Pension" and other funds clearly intended to vest and payout to the workers at some later date after continued illegal employment and presence in the Country. Unlike the cases permitting backwages for already-performed work, the incentive to commit IRCA violations should the contribution payments in issue here be compelled is overwhelming. In addition to the incentive to the workers themselves, who are promised payments from benefit funds into the future should they continue to obtain unauthorized employment, the union and Funds clearly stand to gain from the arrangement. The illegal workers' ability to ultimately collect or "cash out" on any of the benefits is suspect – indeed, the Plaintiffs acknowledge this potential in their papers. (Doc. No. 49, Plaint. Supp. Br. at 11). And any funds collected that are not paid out "can still be dispersed to the Funds for the benefit of other plan participants and to cover other shortfalls" as explained by the Plaintiffs. (*Id.*). Given these circumstances, the union and funds are clearly incentivized to either: 1) work with companies with known illegal workers; or 2) to recruit members of illegal status.

     Magistrate Judge Scanlon found that there is no incentive for the Plaintiffs to commit or encourage future IRCA violations because "Defendant does not show that the Union is entitled to any of the Plan's surplus assets." (R&R, pp. 33-34). The court reasoned that ERISA only authorizes plan assets to be held to provide benefits to participants and beneficiaries, and that the Funds are not entitled to any "overpayment" of contributions. (*Id*. p. 34). However, Plaintiffs admit that the contributions paid may not go to the workers themselves if it is determined they are not eligible to obtain benefits, and would then be used to fill "shortfalls" in the union funds. (Doc. No. 49, Plaint. Supp. Br. at 11). Indeed, the contributions are not "overpayments" and it is not clear that the union would have any obligation to return them in the event certain of the workers are determined to be unauthorized workers. The Funds would instead retain the

contributions, creating an evident perverse incentive to work with unauthorized aliens, or companies who hire unauthorized aliens, contemplating and encouraging further and continued IRCA violations.

Magistrate Judge Scanlon indicated that employers would be encouraged to hire unauthorized workers if they could avoid paying contributions on their behalf. (R&R, p. 30). However, this argument was rejected by the Second Circuit in *Palma*. There, plaintiffs argued that awards of backpay were "needed in order to discourage employers from hiring undocumented workers." *Palma,* 723 F.3d at 184. The *Palma* court dismissed this argument, determining that sanctions other than an award of backpay in violation of IRCA existed in order to deter the employment of unauthorized workers:

> "although petitioners have argued that awards of backpay are needed in order to discourage employers from hiring undocumented workers, the *Hoffman Plastic* Court noted that sanction other than the requirement of backpay are available as deterrents *** as the Supreme Court observed in a subsequent case, IRCA's requirements that employers verify the employment authorization status of prospective employees and not continue to employ unauthorized workers 'are enforced through criminal penalties and an *escalating* series of *civil penalties tied to the number of times an employer has violated the provisions*. . ." (emphasis in original). *Id.* at 185.

Payments otherwise prohibited by IRCA cannot be compelled merely to dis-incentivize employers. Rather, the penalties under IRCA are the proper tool in order to combat any incentive to hire undocumented workers. *See Palma*, 723 F.3d at 185.

Because the contributions do not fall within the category of permitted wage payments to unauthorized workers, and the payment of contributions in these circumstances entirely contravenes the purpose of IRCA, contributions to the unauthorized workers cannot be awarded, and summary judgment awarding those contributions should be denied.

### OBJECTION 2. CAPPARELLI'S DECLARATION RAISED ISSUES OF FACT AS TO THE ACCURACY OF THE REMITTANCE REPORT

Magistrate Judge Scanlon found that Capparelli's declaration failed to raise an issue of fact because "seven months earlier, on March 27, 2013, President Capparelli testified at his deposition that he had reviewed the Eleven Remittance Reports for accuracy before they were initially sent to the Funds." (R&R, p. 40). The court additionally found that Mr. Capparelli's earlier deposition testimony that he "believed" 11 of the 14 remittance reports were accurate precluded consideration of his detailed declaration that he subsequently discovered errors in the reports. (*Id*., pp. 40-41). However, the court ignored a number of exceptions to the rule that a declaration may not contradict earlier deposition testimony, each of which apply here. The court failed to acknowledge that Plaintiffs plopped down a stack of remittance reports at Capparelli's deposition and inquired if they are accurate, without affording time to review and cross-reference them with Defendant's records to determine the accuracy of those reports. His statement that he "believed" them to be accurate, under these circumstances, certainly does not preclude later statements that errors were, in fact, discovered.

Judge Scanlon additionally found that the declaration failed to raise an issue of fact because MC failed to attach its books and records substantiating the errors in the Remittance Reports. (R&R, p. 41). This finding too is in error because the declaration provided sufficient evidence to raise issues of fact without the need to attach MC's books and records. Capparelli's declaration explains an overarching error in the Remittance Reports not dependent on review of the "books and records" of MC: MC "mistakenly submitted remittance reports for all work performed by any member of Local 1010, regardless of whether it was for covered work on non-covered work. As such, the non-covered work on the Bushwick Project, performed by these Local 1010 workers, was erroneously included in the Remittance Reports, resulting in substantial

inaccuracies. . ." (Doc. No. 41, ¶15). Mr. Capparelli went on to give examples of the errors based on the books and records of MC. This is sufficient to raise numerous issues of fact over the accuracy of the Remittance Reports. *See e.g. Central Pension Fund of the Internat'l Union of Operating Engineers and Participating Employer v. Murphy's Tire, Inc.*, 1998 WL 865594 at *9 (N.D.N.Y. 1998)(submission of affidavits from employees of the employer, attesting that they worked on job sites "both inside and outside the territorial jurisdiction of the Union," cast doubt upon the auditor's calculation that defendant's employees performed forty hours of covered work per week, and thus precluded summary judgment in favor of the benefit funds).

### A. Mr. Capparelli's Deposition Testimony Did Not Contradict or Preclude the Declaration.

It is well-settled that a later declaration may be admissible in opposition to a motion for summary judgment "where the later sworn assertion addresses an issue that was not, or was not thoroughly or clearly, explored in the deposition. . ." *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000); *Quiles v. City of New York*, 978 F.Supp.2d 374, 382 (S.D.N.Y. 2013). Second, "a party's deposition testimony as to a given fact does not foreclose a trial or an evidentiary hearing where that testimony is contradicted by evidence other than the deponent's subsequent affidavit, for when such other evidence is available, the concern that the proffered issue of fact is a mere "sham" is alleviated." *Palazzo*, 232 F.3d at 43-44. As explained in *Palazzo*: "[t]o the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility." *Id*. at 44.

Both of these exceptions apply here. The accuracy of each individual remittance report was not "thoroughly or clearly" explored in the deposition, and Capparelli's statement that he "believed" the reports to have been accurate does not foreclose subsequent information that the reports were in fact inaccurate, and is not inconsistent with later finding substantial errors in the

Remittance Reports. Indeed, at the deposition, Plaintiffs gave Capparelli a stack of remittance reports and asked if they are accurate. This is entirely inadequate to address the issue, as it would have taken significant time to review the Remittance Reports and cross-reference them with Defendant's records to determine the accuracy of those reports, as was done by the Defendant subsequent to the deposition. This is not something that could have been adequately addressed at the deposition, and therefore the matter could be addressed, as it was, in Capparelli's declaration.

Capparelli explains these errors in detail, how he is aware of them, and how they are evident when compared with the time frame of projects MC worked on. (Doc. No. 41, pars. 15-23). MC submits that this creates clear issues of fact as to the accuracy of the Remittance Reports and whether all of the work reflected therein constituted covered work with Local 1010, or rather was performed, as explained by Capparelli on the Bushwick Project which constitutes non-covered work under the CBAs. Capparelli provided a copy of the subcontract for the Bushwick project, as well as the CBA for Local 731, showing the similarly of covered work, and explaining the confusion, between covered work under Local 1010 CBAs, and covered work for Local 731. (*Id*. Exs. 1, 2).

Capparelli's declaration was therefore proper for consideration in opposition to the motion.

      **B.**    **Capparelli's Declaration Raised Issues of Fact Over the Accuracy of the Remittance Reports**

Magistrate Judge Scanlon found that Capparelli's declaration failed to raise an issue of fact over the accuracy of the Remittance Reports because he did not attach MC's "'books and records' which President Capparelli found to contradict the Eleven Remittance Reports." (R&R, p. 41). This finding ignores the respective burdens of proof and applies the wrong standard in

resolving the motion. Where "the moving party has attempted to demonstrate that the nonmoving party's evidence is insufficient as a matter of law to establish his claim, the burden shifts to the nonmoving party to come forward with persuasive evidence that his claim is not 'implausible.'" *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "In evaluating the sufficiency of the nonmoving party's evidence, however, courts must still proceed very cautiously. If reasonable minds could differ as to the import of the evidence, and '[i]f … there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Id*.

   Rather than apply this standard, Judge Scanlon inquired whether a "reasonable jury could. . . conclude from the Local 731 CBA and the Bushwick Project Subcontract that the Eleven Remittance Reports are inaccurate." (R&R, p. 42). That is not the proper inquiry. The Bushwick Project Subcontract and Local 731 CBA, along with Capparelli's declaration, provide a reasonable inference that work similar to, but not covered work, was being performed at the same time as covered work. Capparelli's declaration that MC submitted remittance reports to Local 1010 for work covered by all members of Local 1010, whether or not actually covered work, raises a plausible inference of inaccuracy in the report which should be permitted to proceed to trial.

   Indeed, Capparelli's declaration itself does not center on the "books and records" reviewed. He states to his own knowledge that MC "mistakenly submitted remittance reports for all work performed by any member of Local 1010, regardless of whether it was for covered work on non-covered work. As such, the non-covered work on the Bushwick Project, performed by these Local 1010 workers, was erroneously included in the Remittance Reports, resulting in substantial inaccuracies. . ." (Doc. No. 41, ¶ 15).  These attestations are sufficient to raise an

issue of fact over the accuracy of the Remittance Reports; more detailed books and records were not required to defeat summary judgment.

Because MC's declaration was admissible and raised numerous issues of fact over the accuracy of the Remittance Reports, Plaintiffs' summary judgment motion should be denied.

### OBJECTION 3. SUMMARY JUDGMENT ON DAMAGES WAS IMPROPER

After recommending that summary judgment on the question of liability be granted, Magistrate Judge Scanlon found MC liable "for paying delinquent contributions and related damages to the Funds" in the amount of $408,027.97, representing delinquent contributions, interest and liquidated damages. (R&R, p. 45, 50). Magistrate Judge Scanlon additionally found Defendant liable for attorney's fees, recommending that the amount of attorney's fees be determined in a separate proceeding before her. (*Id*., p. 50).

Because the finding of liability for the contributions is improper as explained *supra*, damages may not be awarded. Moreover, because numerous issues of fact remain over the accuracy of the Remittance Reports and the amount of contributions properly due for covered work, if any, summary judgment on damages cannot be awarded. Rather, this action should proceed to trial where these factual issues can be resolved.

## **CONCLUSION**

  MC respectfully requests that the Court reject Magistrate Judge Scanlon's Report and Recommendation in its entirety and deny Plaintiff's motion for summary judgment.

Dated: New York, New York
   November 13, 2015

            COLE SCHOTZ P.C.


            By: /s/ Brian Gardner
            Brian Gardner
            *Attorneys for Defendant M.C.*
            *Landscape Group, Inc.*
            1325 Avenue of the Americas, 19th Floor
            New York, New York 10019
            bgardner@coleschotz.com