UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, ANNUITY AND
APPRENTICESHIP, SKILL IMPROVEMENT,
AND SAFETY FUNDS,

                      Plaintiffs,
    -against-

M.C. LANDSCAPE GROUP, INC.,

                      Defendant.
-------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 29 2016 ★

**BROOKLYN OFFICE**

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
12-CV-834 (CBA) (VMS)

**AMON, Chief United States District Judge:**

    The Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity

& Apprenticeship, Skill Improvement & Safety Funds ("Trustees") bring this action against

M.C. Landscape Group, Inc. ("MC") alleging violations of sections 502 and 515 of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and

section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to

collect delinquent employer contributions to a group of employee benefit plans. (See D.E. # 14.)

    The Trustees moved for summary judgment, (see D.E. # 29), and the Court referred that

motion to the Honorable Vera M. Scanlon, United States Magistrate Judge, for report and

recommendation ("R&R"). (D.E. dated Nov. 13, 2013.) Magistrate Judge Scanlon's

comprehensive R&R recommends that the Trustees' motion be granted and MC be found liable

and ordered to pay its delinquent contributions plus statutory damages. (See D.E. # 68.) For the

following reasons, the Court adopts those recommendations.

**BACKGROUND**

The Court presumes familiarity with the factual and procedural history of this case, as set forth in the R&R.  (See R&R at 1–26.)  In short, MC is a landscaping company that regularly works on publicly funded projects requiring it to use union labor.  (Id. at 5.)  MC entered into two collective bargaining agreements ("CBAs") with the Highway, Road, and Street Construction Laborers Local Union 1010 ("Local 1010"), which were in place from mid-2009 to mid-2015.  (Id. at 6–7.)  The CBAs required MC to contribute to various Local 1010 benefit funds in amounts corresponding to the hours that MC's employees worked on "covered work," as defined by the CBAs.  (Id. at 8.)  MC was required to submit periodic remittance reports confirming the amount of covered work employees performed and acknowledging its obligations under ERISA to make contributions to the funds.  (Id. at 9–10.)  MC did submit such reports, but when the Local 1010 benefit funds sought the contributions owed, MC refused to pay.  (Id. at 15–20.)  MC claimed the remittance reports were inaccurate and that some of the workers who performed covered work were not authorized to work in the United States.  (Id. at 20–22.)  This suit followed.

**STANDARD OF REVIEW**

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  To accept those portions of an R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (internal quotation marks and citation omitted).  But "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected

to." Fed. R. Civ. P. 72(b)(3).  "However, to the extent that a party makes only conclusory or general objections, or simply reiterates the original arguments, the court reviews the Report and Recommendation only for clear error." Soley v. Wasserman, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

## DISCUSSION

MC makes three objections to the R&R.  The first two objections are (1) that the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1324a et seq., prohibits awarding unpaid contributions to the Trustees for hours worked by undocumented workers and (2) that MC President Mariano Capparelli's October 22, 2013, declaration raises a triable issue as to the accuracy of the remittance reports that MC submitted to Local 1010.  (See D.E. # 71, Obj. to Report and Rec., "MC Obj.," at 2.)  The third objection is that summary judgment on damages is improper because of the first two objections on liability.  (Id. at 16.)  The first two of these objections, however, simply reiterate arguments made to Magistrate Judge Scanlon, and the third wholly relies on the first two.  Therefore these objections do not merit de novo review.  See Soley, 823 F. Supp. 2d at 228.  However, in an abundance of caution the Court has reviewed these issues de novo.  Having done so, the Court adopts the R&R's comprehensive analysis of the issues and its recommended conclusions, with the following additional comments.[1]

The Court agrees with Magistrate Judge Scanlon's conclusion that IRCA does not prohibit the award of unpaid contributions to the Trustees.  As the R&R explains, ERISA awards unpaid contributions based on work that was actually and already performed.  (See R&R at 29–

---

[1] The R&R also rejected MC's two secondary arguments, namely that ERISA section 515 rendered the CBAs unenforceable as inconsistent with the law and that a breach of the "qualified employee" portion of the CBAs entitled MC to an offset of its contributions.  (See R&R at 36–39.)  MC has not objected to these conclusions, except by its statement that "MC objects to the R&R in its entirety," (MC Obj. at 4), which is too "conclusory [and] general" to necessitate de novo review, see Soley, 823 F. Supp. 2d at 228.  The Court has therefore reviewed these conclusions for clear error and, finding none, adopts them.

3

31.) In this sense, ERISA awards are similar to awards under the Fair Labor Standards Act ("FLSA"), which courts consistently permit undocumented workers to recover despite IRCA, (see id. at 30–31 (collecting cases including Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1306 (11th Cir. 2013), and Lucas v. Jerusalem Café, LLC, 721 F.3d 927, 934 (8th Cir. 2013), cert. denied 134 S. Ct. 1515)), and to awards under New York's worker's compensation law, which the Second Circuit has permitted undocumented workers to recover despite IRCA, (see id. at 30 (citing Madeira v. Affordable Housing Found., Inc., 469 F.3d 219, 243 (2d Cir. 2006))). As the R&R also makes clear, ERISA awards are unlike "post-termination backpay" awards under the National Labor Relations Act ("NLRA") for work that would have been performed but for the employer's illegal action, but that was not actually performed. (See id. at 34–35 (distinguishing Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), which held that backpay awards to an undocumented worker under the NLRA for "years of work not performed" were impermissible under IRCA); see also Colon v. Major Perry Street Corp., 987 F. Supp. 2d 451, 453 (S.D.N.Y. 2013) (distinguishing impermissible post-termination backpay from permissible retrospective backpay for purposes of determining whether IRCA precludes certain recovery).) Here the benefits are grounded in completed, actually performed work—indeed MC's remittance reports calculate the work at issue down to the hour, (see R&R at 16–17). Requiring MC to honor its collectively bargained agreement is thus retrospective only, requiring and assuming no continued IRCA violation. The Court therefore adopts the R&R's conclusion that IRCA does not prevent recovery under ERISA here.

The Court also agrees with Magistrate Judge Scanlon that MC fails to raise a genuine dispute over the accuracy of the remittance reports. (See R&R at 39–45.) At a March 27, 2013, deposition, MC President Capparelli testified that during the time period at issue it was his

4

practice to review these remittance reports before they were submitted. (<u>See</u> D.E. # 34-1 at 14:14–16, 15:21–23.) Capparelli specifically testified that he had in fact reviewed eleven of the fourteen remittance reports at issue. (<u>Id.</u> at 15:24–16:1.) When presented with those reports at the deposition, Capparelli was told repeatedly to take time to look them over. (<u>See id.</u> at 16:5–6; 16:10–13; 16:14–16 ("So take as long as you need, just a few minutes to look at them, and we'll continue. You can tell me when you're done.").) He then testified that he believed the reports to be accurate and, to his knowledge, there was nothing inaccurate in them. (<u>Id.</u> at 16:7–9, 18–22.) Capparelli now contradicts that testimony with a later affidavit, which states that certain "books and records" not before the Court show inaccuracies in the remittance reports. (<u>See</u> D.E. # 41.) But Capparelli cannot escape his earlier testimony by relying on an affidavit that provides only a hearsay account of the contents of books and records not before the Court. (<u>See</u> R&R at 39–45.) The Court therefore adopts the R&R's conclusion that there is no genuine dispute over this issue.

Finally, the Court adopts the R&R's recommendation as to damages. As the R&R explains, under ERISA, plaintiffs are entitled to delinquent contributions, interest on unpaid contributions, liquidated damages, and attorney's fees and costs. (<u>See id.</u> at 45 (quoting 29 U.S.C. § 1132(g)(2)).) And as the R&R meticulously details, the amounts of plaintiff's entitlement with respect to delinquent contributions, interest on unpaid contributions, and liquidated damages are adequately supported by uncontradicted evidence in the record. (<u>See id.</u> at 46–49.) The Court therefore rejects MC's final objection and adopts the R&R's recommendation that plaintiffs are entitled to damages of:

- $264,981.94 in delinquent contributions;
- $89,225.40 in interest on unpaid contributions for the time period from June 5, 2012 (the midpoint of MC's delinquency) to October 16, 2015 (the date of the R&R); plus an additional <u>per diem</u> interest of $72.60 from October 16, 2015, through March 28, 2016, the date of this Court's decision; plus $824.24 in interest

5

on MC's prior late payment of contributions; for a total of $102,028.64 in unpaid-contribution interest; and

- $52,996.39 in liquidated damages.

(See id.)

With respect to attorney's fees, the Trustees request a later proceeding to calculate damages. The R&R recommends granting this request and referring the matter back to Magistrate Judge Scanlon to determine the Trustees' reasonable attorney's fees and costs. (See id. at 49–50.) The Court adopts this recommendation.

## CONCLUSION

For these reasons, the Court adopts the R&R's recommendations and grants the Trustees' motion for summary judgment in its entirety; finds MC liable for its unpaid contributions; and orders MC to pay the Trustees a total of $420,006.97 in damages, which reflects $264,981.94 in delinquent contributions, $102,028.64 in interest on these delinquent contributions, and $52,996.39 in liquidated damages.

The Court also grants the Trustees' request to have the amount of their reasonable attorney's fees and costs assessed in a separate proceeding and respectfully refers this matter back to Magistrate Judge Scanlon for a determination of these costs and fees.

SO ORDERED.

Dated:  March 28, 2016
        Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

6